IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
QWEST CORPORATION,              )
                                )
          Plaintiff,            )     4:08CV3035
                                )
     v.                         )
                                )
COX NEBRASKA TELCOM, LLC,       )     MEMORANDUM OPINION
NEBRASKA PUBLIC SERVICE         )
COMMISSION, GERALD L. VAP, in   )
their official capacities as    )
Commissioners of the Nebraska   )
Public Service Commission,      )
ANNE C. BOYLE, in their         )
official capacities as          )
Commissioners of the Nebraska   )
Public Service Commission,      )
TIM SCHRAM, in their official   )
capacities as Commissioners     )
of the Nebraska Public          )
Service Commission, ROD         )
JOHNSON, in their official      )
capacities as Commissioners     )
of the Nebraska Public          )
Service Commission, and         )
FRANK E. LANDIS JR., in their   )
official capacities as          )
Commissioners of the Nebraska   )
Public Service Commission,      )
                                )
          Defendants.           )
_____)
```

This matter comes before the Court on Qwest Corporation's ("Qwest") petition for review of the Nebraska Public Service Commission's ("Commission") Order (*See* Filing No. 1).

**BACKGROUND**

**1. Factual Background**

This case arises under the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 151 et seq., and involves the issue of whether an incumbent local exchange carrier ("ILEC") is

required to provide transit service to a competitive local exchange carrier ("CLEC") pursuant to the ILEC's interconnection obligations under Section 251 of the Act.[1]  In this case, Qwest is an ILEC, and Cox Nebraska Telecom, LLC ("Cox") is a CLEC.

Cox wants to purchase transit service from Qwest to enable Cox to indirectly interconnect with other carriers.[2]  Cox benefits from an indirect interconnection because it enables Cox customers to call customers of a third carrier without requiring Cox to directly interconnect with the third carrier.  To achieve an indirect interconnection, Cox needs a carrier, such as Qwest, to act as a transiting carrier.  As a transit carrier, Qwest acts as a bridge between the networks of Cox and the third carrier, transiting traffic that originates from an end user on Cox's network and terminates to an end user on the third carrier's network (*See* R-00827).

Transit service is a switching and transport function that Qwest provides carriers to indirectly interconnect with other carriers (Filing No. 43, p. 8).  Although Qwest is willing

---

[1] ILEC means "a local telephone service provider that used to have a monopoly in a certain area."  *Qwest Corp. v. Pub. Utils. Comm'n of Colo.*, 479 F.3d 1184, 1186 (10th Cir. 2007); *see also* 47 U.S.C. § 251(h).  CLEC means a telecommunications carrier that competes with already existing carriers in a local market.  *See Qwest Corp.*, 479 F.3d at 1186.

[2] The term interconnect will be discussed in more detail below, but generally, carriers use the term interconnect "to refer to the physical linking and use of networks owned by different carriers to permit customers of one carrier to call customers of another carrier."  *Iowa Network Servs., Inc. v. Qwest Corp.*, 385 F. Supp. 2d 850, 855 n. 6 (S.D. Iowa 2005).

to provide transit service, the parties dispute whether Qwest is required to provide the service at cost-based rates.[3]

**2. Procedural Background**

Qwest and Cox attempted to negotiate an interconnection agreement as required by the Act. The parties failed to negotiate the rate at which Qwest would offer transit service, and Cox submitted the issue to arbitration.[4] The arbitrator determined that Qwest was required to provide transit service under Section 251 at "total element long run incremental cost" ("TELRIC") based rates (*See* R-01528-10538). The Commission adopted the arbitrator's findings (*See* R-02088-02089).

Qwest petitioned the Court for review of the Commission's order, seeking declaratory and injunctive relief.[5] Qwest claims the Commission erroneously interpreted Section 251 of the Act and acted ultra vires when it regulated the rates for transit service. Qwest claims transit service is governed by Section 271 of the Act, and the Federal Communications Commission ("FCC") has sole jurisdiction over the pricing of network elements governed by Section 271.

---

[3] Even though Qwest is willing to provide transit service, the Court must determine whether Qwest is required to provide transit service under Section 251 of the Act because this finding impacts the proper rate for the service.

[4] The parties submitted several issues to arbitration, but Qwest's obligation to provide transit service is the only issue on appeal.

[5] The Court has jurisdiction over all of Qwest's claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 47 U.S.C. § 252(e)(6).

**STANDARD OF REVIEW**

The Court reviews a state commission's interpretation and application of federal law de novo. *See Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n*, 530 F.3d 676, 682 (8th Cir. 2008).

**DISCUSSION**

In this case, Section 251 of the Act is at issue. "The plain meaning of a statute controls, if there is one, regardless of an agency's interpretation." *Horras v. Leavitt,* 495 F.3d 894, 900 (8th Cir. 2007)(quoting *Hennepin County Med. Ctr. v. Shalala,* 81 F.3d 743, 748 (8th Cir. 1996)). "If there is ambiguity in a statute that an agency has been entrusted to administer, however, the agency's interpretation is controlling when embodied in a regulation, unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* The FCC is the agency entrusted to administer the Act,[6] and therefore, the Court must defer to reasonable FCC interpretations of the Act where applicable.

Section 251 of the Act establishes a "three-tiered hierarchy of escalating obligations" on telecommunications carriers based on the type of carrier involved. *Total Telecomms. Servs., Inc.*, 16 F.C.C.R. 5726, 5737 (2001). The first tier imposes limited obligations on all telecommunications carriers, including a duty "to **interconnect** directly or indirectly with the facilities and equipment of other telecommunications carriers."

---

[6] 47 U.S.C. § 151.

47 U.S.C. § 251(a)(1)(emphasis added).  The second tier imposes additional obligations on all local exchange carriers ("LEC"), including a duty "to establish reciprocal compensation arrangements for the transport and termination of telecommunications."  47 U.S.C. § 251 (b)(5).  The third tier imposes more stringent obligations on ILECs, including a duty to interconnect an ILEC's network with the facilities and equipment of a requesting CLEC.  47 U.S.C. § 251(c)(2); 47 C.F.R. § 51.305(a).  Specifically, Section 251(c)(2) states an ILEC has the following duty:

> . . . to provide, for the facilities and equipment of any requesting telecommunications carrier, **interconnection** with the local exchange carrier's network--
>
> (A) for the transmission and routing of telephone exchange service and exchange access;[7]
>
> (B) at any technically feasible point within the carrier's network;
>
> (C) that is at least equal in quality to that provided by the local exchange carrier to itself or

---

[7] The Act defines "telephone exchange service" as: "(A) service within a telephone exchange, or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge, or (B) comparable service provided through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service."  47 U.S.C. § 153(47).  The Act defines "exchange access" as: "the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services." 47 U.S.C. § 153(16).

>                    to any subsidiary, affiliate, or
>                    any other party to which the
>                    carrier provides interconnection;
>                    and
>
>                    (D) on rates, terms, and conditions
>                    that are just, reasonable, and
>                    nondiscriminatory, in accordance
>                    with the terms and conditions of
>                    the agreement and the requirements
>                    of this section and section 252 of
>                    this title.

47 U.S.C. § 251(c)(2)(emphasis added).

The parties dispute whether an ILEC's interconnection obligations under Section 251(c)(2) include a duty to provide transit service when an interconnecting CLEC seeks to indirectly interconnect with a third carrier.  The plain meaning of the statute's text establishes Congress's clear intent to impose such a duty on ILECs.

The Act does not define interconnection, but the unambiguous language of Section 251 demonstrates that an ILEC must provide transit under Section 251(c)(2).  Section 251(a) requires all carriers to interconnect and provides that a carrier may fulfill its interconnection obligation by interconnecting directly or indirectly with other carriers.  47 U.S.C. § 251(a)(1).  By permitting carriers to fulfill their interconnection obligations through indirect interconnection, Congress clearly envisioned that indirect interconnections would be an available means of interconnection.  Transit service plays a critical role in the availability of indirect interconnections. *See Developing a Unified Intercarrier Comp. Regime,* 20 F.C.C.R. 4685, 4740 (2005)(Further Notice of Proposed Rulemaking)("Further

Notice of Proposed Rulemaking"). As recognized by the FCC, carriers "often rely upon transit service from the incumbent LECs to facilitate indirect interconnection with each other." *Id.* Because transit service is essential to indirect interconnections, the text of Section 251(a) strongly indicates that an ILEC is required to provide transit under the Act.

When Section 251(a) is read in conjunction with Section 251(c), it is clear that Congress imposed this obligation in Section 251(c) of the Act.[8] Under Section 251(c), an ILEC must allow a CLEC to interconnect its facilities and equipment with the ILEC's network "for the transmission and routing of telephone exchange service and exchange access." 47 U.S.C. § 251(c)(2)(A); 47 C.F.R. § 51.305(a). Accordingly, an ILEC must provide transit service when a CLEC interconnects with the ILEC for the purpose of indirectly interconnecting with a third carrier. Otherwise, the indirect interconnection could not be used "for the transmission and routing of telephone exchange service and exchange access," and an ILEC could frustrate the flow of traffic and prevent carriers from indirectly interconnecting. Such a finding would render the "indirectly" language in Section 251(a) meaningless. The clear language of Section 251 requires ILECs to

---

[8] Section 251(b)(5) which requires LECs to establish compensation arrangements for the transport and termination of telecommunications does not apply when a carrier is acting as a transiting carrier. *See* Further Notice of Proposed Rulemaking, 20 F.C.C.R. at 4737-38. Section 251(b) applies to arrangements between an originating carrier and a terminating carrier. *Id.* at 4737. In the context of transit, the transiting carrier is not the originating or terminating carrier. Accordingly, Qwest is not required to provide transit under Section 251(b).

directly interconnect with competitors and facilitate competitors' ability to indirectly interconnect.

*Competitive Telecomms. Ass'n v. FCC*, 117 F.3d 1068 (8th Cir. 1997)("CompTel") does not compel a contrary finding. In *CompTel*, the Eighth Circuit Court of Appeals reviewed portions of the FCC's First Report and Order,[9] including the FCC's definition of interconnection. *Id.* at 1070-71. The Court affirmed the FCC's construction of interconnection as the physical linking of networks and not the transportation of traffic. *Id.* at 1071-72. In so finding, the Court determined that the language "for the transmission and routing of telephone exchange service . . . ." in Section 251(c)(2) merely described what the interconnection would be used for and did not create a duty to transport traffic. Id. However, transit service was not at issue in *CompTel*. While the Court was correct in finding that interconnection does not generally include the transport of traffic, an ILEC's obligation to provide transit service is an exception to the general rule. Based on the facts that Section 251 explicitly supports the availability of indirect interconnections, transit is critical to the availability of indirect interconnections, and Section 251(b)(5) does not apply to transiting carriers, the Court finds that an ILEC's interconnection obligations must include the duty to provide

---

[9] *Implementation of the Local Competition Provisions in the Telecomms. Act of 1996*, 11 F.C.C.R. 15499 (1996)("First Report and Order"), *aff'd in part and rev'd in part, AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366 (1999).

transit even though interconnection does not usually include transport.

The Court's finding is consistent with the purpose of the Act.  Congress passed the Act to encourage competition among telephone service providers.  *Sw. Bell Tel., L.P.*, 530 F.3d at 680.  Ensuring that carriers can obtain transit service at cost-based rates facilitates this goal.  The FCC has recognized that "carriers that are indirectly interconnected may have no efficient means by which to route traffic between their respective networks" without the continued availability of transit service.  Further Notice of Proposed Rulemaking, 20 F.C.C.R. at 4740.  Carriers that cannot indirectly interconnect with other carriers will be required to directly interconnect with every carrier they need to exchange traffic with (*See* R-01529).  This alternative is neither economical nor efficient for some carriers, and as a result, may prevent carriers from entering the market.  AT&T commented on the relationship between the availability of transit service and competition during the FCC's notice and comment rulemaking proceedings, stating: "transiting lowers barriers to entry because two carriers avoid having to incur the costs of constructing the dedicated facilities necessary to link their networks directly."  Further Notice of Proposed Rulemaking, 20 F.C.C.R. at 4740.  Construing

Section 251 in a manner that requires ILECs to provide transit service furthers the Act's purpose.[10]

Qwest claims that FCC rules and decisions preclude the Court's finding that an ILEC must provide transit under Section 251(c). The FCC has defined interconnection and analyzed an ILEC's interconnection obligations in other contexts; however, the FCC has not yet determined whether an ILEC is required to provide transit service pursuant to its interconnection obligations. Further Notice of Proposed Rulemaking, 20 F.C.C.R. at 4737. Indeed, the FCC is currently seeking comment on its authority to promulgate transit rules and the need for rules that directly cover an ILEC's transit obligations. *See* Further Notice of Proposed Rulemaking, 20 F.C.C.R. 4685. While the Court does not have the benefit of the FCC's guidance on this issue, the FCC's statements in its current notice and comment rulemaking proceedings indicate that the FCC's existing rules and decisions do not preclude the Court's finding that Section 251(c) requires ILECs to provide transit service. *See id.*

The FCC's existing rules and decisions establish that interconnection does not generally include the transport of traffic. However, the FCC has left open the possibility that interconnection may include transport in specific and narrow circumstances. The FCC's rules define interconnection as "the linking of two networks for the mutual exchange of traffic" and

---

[10] The Court is not persuaded by Qwest's unsupported claims that transit service falls under the scope of Section 271 rather than Section 251 of the Act.

notes "[t]his term does not include the transport and termination of traffic." 47 C.F.R. § 51.5. The FCC has applied this definition to Section 251(a)[11] and Section 251(c),[12] and federal courts have affirmed the FCC's definition of interconnection as a permissible construction of the statute.[13] Despite the apparent clarity of the FCC's definition, the FCC has more recently found that an ILEC's interconnection obligations include the duty to provide entrance facilities, a form of transport, when entrance facilities are used to transport ILEC to CLEC traffic or CLEC to ILEC traffic. *See Unbundled Access to Network Elements*, 20 F.C.C.R. 2533, 2611-12 (2005); *Sw. Bell Tel., L.P.*, 530 F.3d at 683-84.

This case differs from the FCC's entrance facilities order in that transit service involves CLEC to CLEC traffic. Nonetheless, the FCC's entrance facilities order demonstrates that interconnection can include transport in limited circumstances.

The Court has thoroughly considered the FCC rules and decisions cited by Qwest, but the Court does not find that the FCC intended for these authorities to be conclusive on the issue of whether an ILEC is required to provide transit. Nonetheless, the clear language of Section 251 requires an ILEC to provide

---

[11] *Total Telecomms. Servs., Inc.*, 16 F.C.C.R. at 5736-37.

[12] First Report and Order, 11 F.C.C.R. at 15588-90.

[13] *CompTel,* 117 F.3d at 1072; *AT&T Corp. v. FCC*, 317 F.3d 227, 234-35 (D.C. Cir. 2003).

transit service pursuant to its interconnection obligations under Section 251(c)(2).[14]  Thus, Qwest must provide transit service to Cox.

Finally, the Court must determine whether Qwest must provide transit service at TELRIC-based rates.  Interconnection must be offered at cost-based rates established by state commissions.  47 U.S.C. § 252(d).  The FCC has approved TELRIC as a proper methodology for determining the rates for interconnection.  First Report and Order, 11 F.C.C.R. at 15844.  The Commission acted within its authority and did not err when it determined that Qwest was required to provide transit service at TELRIC-based rates.  Accordingly, the Commission's Order will be affirmed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 17th day of December, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court

---

[14] Because the Court finds that Qwest is required to provide transit under Section 251(c)(2), it is not necessary to determine whether Section 251(a) provides an independent basis for requiring Qwest to provide transit service.